2002 WY 133

**Sidney R. SCHADE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 01–52.

Supreme Court of Wyoming.

Sept. 6, 2002.

Kenneth M. Koski, State Public Defender; and Donna D. Domonkos, Appellate Counsel, Representing Appellant.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Georgia L. Tibbetts, Senior

Assistant Attorney General, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1]   Sidney Schade pleaded guilty to two counts of immoral or indecent acts with a minor pursuant to a plea agreement by which the state agreed to recommend probation and Mr. Schade agreed to obtain a sex offender evaluation.   Several months after his release on bond pending sentencing, Mr. Schade violated a bond condition which prohibited contact with the victims.   The state petitioned to revoke his bond, and Mr. Schade was arrested.   Mr. Schade and the state entered into a second plea agreement which provided the state would continue to recommend probation on the condition Mr. Schade was accepted into a community alternative placement program such as the Intensive Supervision Program (ISP).   Sentencing was delayed while Mr. Schade unsuccessfully attempted to gain entrance into a variety of such programs.   He was ultimately sentenced to two consecutive terms of three to five years of imprisonment.   Mr. Schade appeals contending the state violated the first plea agreement and the district court failed to advise him he would be unable to withdraw his guilty plea.   Finding no error, we affirm.

## ISSUES

[¶ 2]   Mr. Schade presents these issues for our review:

*ISSUE I*

Whether Mr. Schade's sentence is an illegal sentence because the interim probationary terms were illegal?

*ISSUE II*

Whether the state breached the plea agreement when it interfered with Mr. Schade's ability to complete the terms of the interim probation?

*ISSUE III*

Whether Mr. Schade should be allowed to withdraw his guilty plea because the court did not properly follow Rule 11, W.R.Cr.P., when it failed to properly advise Mr. Schade?

*ISSUE IV*

Whether Mr. Schade was denied due process when the court failed to sentence him within one year of adjudication of guilt?

The state phrases the issues as:

I.   Did the state breach the plea agreement?

II.   Did the district court fail to comply with the mandates of Rule 11 of the Wyoming Rules of Criminal Procedure in accepting Appellant's pleas?

III.   Did the district court abuse its discretion in imposing sentence?

## FACTS

[¶ 3]   Between May 1, 1999, and August 8, 1999, Mr. Schade inappropriately touched the victims, both age fourteen, on separate occasions.   He was charged with one count of third-degree sexual assault under Wyo. Stat. Ann. § 6–2–304(a)(ii) (LexisNexis 2001), two counts of immoral or indecent acts with a minor under Wyo. Stat. Ann. § 14–3–105(a) (LexisNexis 2001), and two counts of causing or encouraging a child to commit with him any immoral or indecent act under § 14–3–105(a).   On December 29, 1999, at his arraignment, Mr. Schade pleaded guilty to two counts of indecent or immoral acts with a minor.   In exchange for his guilty pleas, the state agreed to dismiss the remaining three charges and recommend probation.   Pursuant to both his bond conditions and this first plea agreement, Mr. Schade was prohibited from contacting his victims.   The first plea agreement also required that he complete a sex offender evaluation prior to sentencing.

[¶ 4]   On February 16, 2000, the state petitioned to revoke his bond because Mr. Schade had contact with one of the victims, and the district court thereafter issued a bench warrant for his arrest.   On May 12, 2000, Mr. Schade appeared before the district court for sentencing and acknowledged that a sex offender evaluation had not been

* Chief Justice at time of expedited conference

completed. The parties reached a second agreement wherein the state would continue to recommend probation provided Mr. Schade was accepted in the ISP or a comparable program to ensure that (1) he had no further contact with the victims and (2) he enrolled in a sex offender treatment program. Although Mr. Schade was given approximately six months of continuances for his sentencing hearing to pursue admission into an ISP-type program, he was not accepted in any program. His inability to enroll in an acceptable program, coupled with his previous failure to abide by the terms of his bond release and plea agreement, caused the state to argue against probation at the sentencing hearing and to urge the court to impose consecutive imprisonment terms of four to six years. Concluding probation was not appropriate, on January 12, 2001, the district court sentenced Mr. Schade to serve consecutive imprisonment terms of not less than three years nor more than five years with credit against the minimum and maximum for time served while awaiting disposition. Mr. Schade now appeals his judgment and sentence.

## DISCUSSION

### A. Plea Agreement

[¶ 5] Mr. Schade contends the state breached the first plea agreement when it interfered with his ability to comply with its terms by incarcerating him and preventing him from being able to obtain the sex offender evaluation. Our standard concerning a plea agreement breach is as follows:

> [W]hether the government has breached a plea agreement is reviewed *de novo*. In determining whether a breach has occurred, we: (1) examine the nature of the promise; and (2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time the plea was entered. " 'Principles of general contract law guide our analysis of the government's obligations under the agreement.' " *Clingman* [*v. State* ], 2001 WY 46, ¶ 20, 23 P.3d [27,] 31 [ (Wyo.2001) ] (quoting [*United States v.*] *Peterson,* 225 F.3d [1167,] 1170–71 [ (10th Cir.2000), *cert. denied,* 531 U.S. 1131, 121 S.Ct. 893, 148

L.Ed.2d 799 (2001) ] ). It follows that, "as in contract," a party should not be released from its obligations under a plea agreement absent another party's material or substantial breach of that agreement. A material or substantial breach is one that goes to the whole consideration of the agreement. Several factors are relevant to whether a breach is material or substantial, including the extent to which the non-breaching party will be deprived of the benefit it reasonably expected and the extent to which the breaching party's conduct comports with the standards of good faith and fair dealing.

*Browning v. State,* 2001 WY 93, ¶ 32, 32 P.3d 1061, ¶ 32 (Wyo.2001) (some citations omitted).

[¶ 6] Mr. Schade asserts general principles of contract law prohibit a party's interference with another party's ability to perform its contract obligations. In this instance, he argues the prosecution's actions in revoking his bond made it impossible for him to fulfill a requirement of the first plea agreement that he obtain a sex offender evaluation. He asserts the state should not be permitted to rely on his nonperformance to revoke the plea agreement when the state's actions directly caused his nonperformance. However, the plea agreement was revoked because he contacted a victim. In addition, Mr. Schade had almost three months from the entry of his pleas on December 29, 1999, to the date of his arrest on March 22, 2000, for violation of his bond condition in which to complete the sex offender evaluation, and he failed to do so.

[¶ 7] Furthermore, Mr. Schade ignores the fact the plea agreement was renegotiated. The second agreement did not require a sex offender evaluation and, instead, was contingent on him being accepted into the ISP or a comparable program. Consequently, his completion of a sex offender evaluation was no longer a prerequisite for the state's probation recommendation and was irrelevant.

### B. W.R.Cr.P. 11

[¶ 8] Mr. Schade also contends, without citing any authority, the district

court did not advise him that, if he failed to comply with the interim probation conditions, the state could not be forced to abide by the plea agreement. As an initial matter, there were no interim probation conditions; rather, no contact with the victims was a bond condition for Mr. Schade being released on his own recognizance. Although this bond condition was mentioned at the arraignment where Mr. Schade advised the court he accepted the first plea agreement, it was not an independent condition of the agreement. The "no contact" provision was mentioned merely in the context of a reminder to all parties that it was a requirement for bond. Furthermore, as the state points out, W.R.Cr.P. 11(d) does not require a district court, as a condition of ensuring a plea is voluntary, to specifically advise a defendant of the consequences of failing to comply with a plea agreement's terms. It is axiomatic that, if a defendant fails to comply with a plea agreement, the state is not bound by that agreement.

[¶ 9] W.R.Cr.P. 11(d) requires a district court to assure that a plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The purpose of this rule is to allow the judge to determine whether the defendant entered the plea voluntarily and with an understanding of the consequences of the plea. *Smallwood v. State*, 748 P.2d 1141, 1143 (Wyo. 1988). This court looks to the totality of the circumstances to determine the voluntariness of a plea. *Reyna v. State*, 2001 WY 105, ¶ 9, 33 P.3d 1129, ¶ 9 (Wyo.2001). The well defined standard for determining whether a plea was knowing and voluntary provides:

"[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g.bribes)."

*Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (quoting *Shelton v. United States*, 246 F.2d 571, 572 n. 2 (5th Cir.1957), *rev'd on other grounds*, 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958)); *see also State v. McDermott*, 962 P.2d 136, 139 (Wyo.1998).

[¶ 10] For a determination of whether Mr. Schade's pleas were made voluntarily, we set forth the applicable portions of the plea hearing:

THE COURT: Good morning. Mr. Schade is here for re-arraignment; is that correct[?]

[DEFENSE COUNSEL]: That's correct, Your Hono[r].

THE COURT: Are there any charge concessions or arrangements we should make of record concerning that change?

[DEFENSE COUNSEL]: Yes, Your Honor. It's my understanding that Mr. Schade will enter a plea of guilty to one count of the immoral acts for each minor victim, a total of two; that the prosecution and defense—that the prosecution is prepared to supplement factual basis, if necessary, but the prosecution and the defense will jointly recommend probationary disposition with a requirement to participate in an acceptable sex offender therapy program, to follow their recommendations and the other normal conditions of probation, no drugs, alcohol, no other crimes, DNA draw, etc. In exchange for that, the prosecution agrees to dismiss one count of immoral acts with a minor.

THE COURT: Is that the State's agreement?

[PROSECUTOR]: Yes, Your Honor. Just to specify two additional things. One is that this would be a plea to Counts II and III of the currently existing Information and that the conditions of recommending probation include that he get a sex offender evaluation pending sentencing and that he *continue to abide by the no contact with the victims provision.*

THE COURT: Do you understand those to be the conditions of this probation, Mr. Schade?

THE DEFENDANT: Yes, sir.

[DEFENSE COUNSEL]: I have never heard these conditions. I guess I need a clarification. My understanding is that the probationary disposition would not depend on any recommendations or findings pursuant to the sex offender evaluation. We've had no discussions as to that.

THE COURT: As I understand what [the prosecutor] said, the only condition is that he participate in that sort of evaluation immediately pending sentencing.

[PROSECUTOR]: Correct. I didn't premise the recommendation of probation on that, just that I want that. That was part of the agreement that the sex offender evaluation actually be done prior to sentencing.

[DEFENSE COUNSEL]: We have no problem with that.

THE COURT: So are you clear on this, Mr. Schade,—

THE DEFENDANT: Yes, sir.

THE COURT:—how we are proceeding? Do you have any questions about it?

THE DEFENDANT: No, sir.

THE COURT: Apparently and, I guess it goes without saying, this arrangement was made with your knowledge and consent; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: So Mr. Schade will be offering pleas of guilty to Counts II and III. And those carry maximum penalties of up to 15 years' imprisonment for each count; is that correct?

[PROSECUTOR]: Ten years, Your Honor.

[DEFENSE COUNSEL]: Ten years.

THE COURT: Ten years.

[DEFENSE COUNSEL]: Also apparently, Your Honor, there are more counts to be dismissed than just one other count, there's three other counts being dismissed.

THE COURT: I gather all but II and III will be dismissed.

[DEFENSE COUNSEL]: That's correct.

[PROSECUTOR]: Correct.

THE COURT: Mr. Schade, it's been stated here that one of [the] features of

this agreement is that your counsel and the counsel for the State will jointly recommend probation. The Court will seriously consider that recommendation but it is not necessarily bound by it. Do you understand that?

THE DEFENDANT: Yes, sir.

(Emphasis added.) After Mr. Schade entered his pleas, the following colloquy occurred:

THE COURT: Finally then, Mr. Schade, other than the arrangement that has been talked about here this morning on the record, have there been any threats of any kind made to you or any promises of any kind to induce you to offer your pleas of guilty?

THE DEFENDANT: No, sir.

THE COURT: You offer these pleas voluntarily and of your own volition?

THE DEFENDANT: Yes, sir.

THE COURT: There is a factual basis underlying the pleas as to both counts and they are not improperly induced. Therefore, they are accepted and entered, and the Court will order a pre-sentence investigation report and require that Mr. Schade commence with the evaluation immediately or as soon as possible.

[¶ 11] This dialogue reflects that Mr. Schade entered his plea freely and voluntarily without threats or promises being made against or to him. It is evident he was informed the state's probation recommendation was contingent upon his completing a sex offender evaluation before his sentencing and having no contact with the victims. Under the totality of the circumstances, we hold Mr. Schade entered his plea knowingly and voluntarily.

[¶ 12] Mr. Schade additionally claims the district court violated W.R.Cr.P. 11(e)(2) by failing to advise him that he would be unable to withdraw his plea in the event it refused to accept the sentencing recommendation in the plea agreement. W.R.Cr.P. 11(e)(2) provides in pertinent part: "If the agreement is

of the type specified in subdivision (e)(1)(B),[1] the court shall advise the defendant that if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw the plea." In *Stowe v. State*, 10 P.3d 551, 552 n. 1 (Wyo.2000), the trial court advised Mr. Stowe that it was not bound by the plea agreement but failed to inform him that he did not have a right to withdraw his plea in the event it did not accept the recommendation. Citing W.R.Cr.P. 11(e)(2), we cautioned that failure to comply with the provision may require reversal of a conviction and remand to permit the defendant to withdraw his plea though we recognized it may also be treated as harmless error.[2] *Id.*

▮▮▮ [¶ 13] Mr. Schade's whole tack in this argument is ill-founded because the first plea agreement was fully replaced and superseded by the second plea agreement. The judge did not fail to accept the sentencing recommendation contemplated by the second plea agreement because it was never made. At the sentencing, Mr. Schade was unable to comply with the condition of the second plea agreement that he be admitted into the ISP or an equivalent program, and, consequently, the state did not, and was not obligated to, make any probation recommendation. As a result, there was no requirement for the court to inform Mr. Schade he would not have the right to withdraw his plea if it declined to accept the state's probation recommendation. No recommendation was made or denied because Mr. Schade was unable to qualify for an acceptable alternative placement program, and so the option to withdraw the guilty plea on those grounds never materialized.

## C. Sentencing Delay

▮▮▮ [¶ 14] Mr. Schade maintains he suffered an impermissible delay in sentencing because he pleaded guilty on December 29, 1999, but was not sentenced until January 12, 2001.

We review speedy sentencing claims under an abuse of discretion standard. *Reagan v. State*, 14 P.3d 925, 927 (Wyo.2000). " 'Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen*, 41 Wash.App. 495, 704 P.2d 1236 (1985).' " *Reagan*, 14 P.3d at 927 (*quoting Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998)).

*Daugherty v. State*, 2002 WY 52, ¶ 29, 44 P.3d 28, ¶ 29 (Wyo.2002).

[A] delay in sentencing in excess of a calendar year from the date guilt is established, whether by trial to a jury or the court or by plea, is presumptively unreasonable.... "The rule that we espouse protects important rights of the convicted defendant. It serves to prevent the possibility that a greater punishment than is deserved will be imposed because of subsequent conduct that results in a violation of the probation. It also serves to ensure that any vagaries of memory will not interfere with the imposition of a sentence appropriate to the individual and the crime."

*Reagan v. State*, 14 P.3d 925, 927–28 (Wyo. 2000) (quoting *Yates v. State*, 792 P.2d 187, 192 (Wyo.1990) (citation omitted)). "The state bears the burden of demonstrating that the delay does not exceed the bounds of reason and the court should not be foreclosed from imposing sentence after the one year period

---

1. W.R.Cr.P. 11(e)(1)(B) provides:
    (e) Plea Agreement Procedure.
    (1) In General. The attorney for the state and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser related offense, the attorney for the state will do any of the following:
        . . .
    (B) Make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that

such recommendation or request shall not be binding upon the court . . .

2. The harmless error standard is set forth in W.R.A.P. 9.04: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded by the reviewing court." *See also* W.R.Cr.P. 52(a). To demonstrate harmful error, the defendant must show prejudice under "circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play." *Johnson v. State*, 790 P.2d 231, 232 (Wyo.1990).

of time." *Detheridge v. State,* 963 P.2d 233, 235 (Wyo.1998).

[¶ 15] We conclude the state carried its burden by demonstrating the sentencing delays were caused by Mr. Schade's multiple requests for continuances. We summarize these requests:

| Sentencing Hearing Set | Reason for Continuance | New Sentencing Hearing Set |
|---|---|---|
| 4/20/00 | Continued at Mr. Schade's request so he could have more time to review the presentence investigation report. | 5/12/00 |
| 5/12/00 | Mr. Schade's counsel advised the court a new sentencing agreement had been reached and requested an ISP referral and a postponement for an eligibility determination. | 7/7/00 |
| 7/7/00 | Mr. Schade did not qualify for ISP so his counsel requested a continuance to determine his eligibility for the Frontier Corrections program. | 7/20/00 |
| 7/20/00 | Hearing continued to permit resolution of Mr. Schade's motion filed July 19, 2000, requesting the district court to require the prosecution to abide by the initial agreement to recommend probationary disposition.[3] | 1/12/01 |
| 1/12/01 | Eligibility evaluations were ordered in November 2000 for the community alternatives programs in Casper, Rock Springs, and Gillette. Sentencing hearing was held approximately two weeks after the filing of the final program denial letter. | |

The district court permitted Mr. Schade and his counsel to thoroughly pursue a wide range of alternative community placement options prior to sentencing. It is evident from the record that Mr. Schade wanted to avoid serving a penitentiary sentence and was given the opportunity to investigate and apply for acceptance in a variety of programs. The time between the guilty plea and sentencing was extended as a direct result of Mr. Schade's actions. The court could have limited this process, but the failure to cut short these inquiries was not an abuse of discretion or unreasonable under the circumstances.

[¶ 16] Mr. Schade also contends he was prejudiced by loss of good time credits as a result of the sentencing delay. Whether he would have qualified for such an award is wholly speculative. Further, he directly caused the time delay through the drawn out efforts to find an alternative to penitentiary confinement.

W.R.Cr.P. 32(c)(1) contains clear guidance for trial courts wishing to overcome the presumption that a delay in sentencing for over a year is unreasonable: "Sentence shall be imposed without unnecessary delay, the court may, when there is a factor important to the sentencing determination that is not then capable of being resolved, postpone the imposition of sentence for a reasonable time until the factor is capable of being resolved." If sentence is not to be imposed at the time guilt is established or soon thereafter, the trial court must ensure that the record clearly indicates the reason for the delay and the circumstances under which the matter will be reset for sentencing.

*Daugherty,* 2002 WY 52, ¶ 44, 44 P.3d 28. The reasons for the delay are apparent in the record and indicate no abuse of discretion or prejudice.

[¶ 17] We, therefore, affirm the district court's decision in all regards.

---

3. It is unclear from the record provided how this motion was resolved.