2006 WY 8

Anna Marie **FERNANDEZ,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

**Anna Marie Fernandez, Appellant**
**(Defendant),**

v.

**The State of Wyoming, Appellee**
**(Plaintiff).**

**Nos. 04–213, 04–214.**

Supreme Court of Wyoming.

Jan. 12, 2006.

---

Representing Appellant: Kenneth M. Koski, State Public Defender; and Donna D. Domonkos, Appellate Counsel.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric Johnson, Director, Prosecution Assistance Program; Jenny L. Craig, Student Director; Eric Heimann, Intern; and Timothy Justin Forwood, Intern.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and DONNELL, D.J.

VOIGT, Justice.

[¶1]   Anna Fernandez pled guilty to three counts of felony welfare fraud and four counts of felony cocaine-related charges, which cases were consolidated for sentencing before the district court.   Fernandez now challenges these judgments and sentences, claiming that the State violated plea agreements in both cases during the sentencing hearing.   We affirm.

## FACTS

[¶2]   On January 16, 2003, an Information was filed in circuit court charging Fernandez with three counts of fraudulently obtaining welfare benefits, in violation of Wyo. Stat. Ann. § 42–2–112(h) (Michie 1997), and two counts of fraudulently obtaining food stamps, in violation of Wyo. Stat. Ann. § 42–2–112(a) (Case No. 04–214, "the welfare fraud case").

[¶3]   Fernandez was subsequently charged with four counts unrelated to the welfare fraud case: two counts of delivery of cocaine, in violation of Wyo. Stat. Ann. § 35–7–1031(a)(i) (LexisNexis 2001); one count of possession with intent to deliver cocaine, in violation of Wyo. Stat. Ann. § 35–7–1031(a)(i); and one count of conspiracy to deliver cocaine, in violation of Wyo. Stat. Ann. § 35–7–1031(a)(i) and Wyo. Stat. Ann. § 35–7–1042 (LexisNexis 2001) (Case No. 04–213, "the cocaine case").

[¶4]   The cases proceeded separately through the court system until sentencing. On September 18, 2003, an agreement was reached wherein Fernandez pled no contest to three of the five counts in the welfare fraud case and the State agreed to recommend probation at sentencing.   The remaining two counts were dismissed by the State. Sentencing on the welfare fraud case was delayed pending the outcome of the cocaine case.

[¶5]   Fernandez pled guilty to all charges in the cocaine case on April 12, 2004.   The welfare fraud case was consolidated with the cocaine case and a sentencing hearing was held on July 12, 2004.   At that hearing, the district court sentenced Fernandez to imprisonment for forty-two months to eight years on each count in the cocaine case, the sentences to run concurrently.   The district court further imposed a three- to five-year term of imprisonment in the welfare fraud case, but suspended that sentence and placed Fernandez on probation for five years.   The sentences in the two cases were to run consecutively, with the cocaine sentence to be served prior to the welfare fraud sentence. On July 19, 2004, the district court issued written orders confirming the oral sentences.

It is from those judgments and sentences that Fernandez now appeals.

## STANDARD OF REVIEW

[¶ 6] Our standard for reviewing claimed breaches of plea agreements is well known:

"When a plea of guilty rests to any significant degree on a promise or agreement by the State, that promise must be fulfilled. Whether the prosecutor has violated the plea agreement is a question that is reviewed de novo." *Herrera v. State,* 2003 WY 25, ¶ 8, 64 P.3d 724, ¶ 8 (Wyo. 2003). A plea agreement is a contract between the defendant and the State and thus general principles of contract law apply to the agreement.

*Rutti v. State,* 2004 WY 133, ¶ 42, 100 P.3d 394, 410 (Wyo.2004), *cert. denied,* — U.S. ——, 125 S.Ct. 1990, 161 L.Ed.2d 858 (2005).

Furthermore, we have said that the prosecutor may not play fast and loose with the established terms of a plea agreement and must explicitly stand by those terms agreed upon. *Herrera [v. State,* 2003 WY 25] at ¶ 18, [64 P.3d 724, 729 (Wyo.2003) ]. If the prosecutor's performance of the terms of a plea agreement is not possible, a withdrawal of the plea is the correct remedy. The prosecutor's remedy was not to violate or mischaracterize the agreement but rather move to withdraw the plea agreement if she did not wish to be bound to its terms. Neither the principles of fairness nor the principles of contract law allow the State to retain the benefit of the agreement while avoiding its obligation. *See State v. Rardon,* 2002 MT 345, ¶ 18, 313 Mont. 321, 61 P.3d 132, ¶ 18 (Mt.2002). "[I]t would be unfair to accept a guilty plea where part of the bargain, upon which the plea was based, was breached. The defendant had not agreed to plead guilty to charges under terms other than those set forth in the agreement." *Cardenas v. Meacham,* 545 P.2d 632, 638 (Wyo.1976) (explaining the rationale behind the *Santobello [v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) ] decision.)

*Ford v. State,* 2003 WY 65, ¶ 18, 69 P.3d 407, 412 (Wyo.2003).

## DISCUSSION

### Welfare Fraud Plea Agreement

[¶ 7] Fernandez claims that the State breached the plea agreement in the welfare fraud case when it argued at the consolidated sentencing hearing for a term of incarceration in the cocaine case. When reviewing breaches of plea agreements, we apply a two-part test. We "(1) examine the nature of the promise; and (2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time the plea was entered." *Schade v. State,* 2002 WY 133, ¶ 5, 53 P.3d 551, 554 (Wyo. 2002). Because we have not been presented with plea agreements reduced to writing, "we must look to the recitation of the plea agreement given at the change of plea hearing to determine the terms of the agreement." *Ford,* 2003 WY 65, ¶ 12, 69 P.3d at 411.

[¶ 8] The express terms of the plea agreement in the welfare fraud case are not at issue here. At the change of plea hearing, counsel for Fernandez detailed both the nature of the promise and Fernandez's understanding of the plea agreement:

[Defense counsel]: ... In exchange for Ms. Fernandez's pleading guilty to three of the five counts charged in the information, the district attorney's office has agreed to recommend a three- to five-year suspended sentence with five years of probation with a suggestion that the Court end probation earlier when restitution is paid in full prior to the end of the five years. The restitution amount would be stipulated to [be] $6,500.

. . . .

There are other charges that are pending before another judge and that this does not have anything to do with that.

An additional agreement is that the suggestion of a three- to five-year suspended sentence as to all counts would be concurrent both as to the suspended portion and as to the period of probation and that's as to this case only.

I believe that's the total of the plea agreement.

[Prosecutor]: (Nodded head.)

THE COURT: Is that your understanding also, Ms. Fernandez?

[Fernandez]: Yes, it is, Your Honor.

[¶ 9] The issue here is whether the State complied with the undisputed terms of this agreement. At the consolidated sentencing hearing for both the welfare fraud and the cocaine cases, the State characterized the agreement as follows:

[Prosecutor]: ... [T]he agreement as outlined was to recommend probation on this offense to give her an opportunity to pay the restitution that would be due and owing. The agreement was entered into and brought before this Court with the understanding that the drug cases were still outstanding and would most likely result in a Women's Center incarceration for the time while the welfare fraud was specifically to be addressed on the record to that case only—

[¶ 10] Defense counsel objected to this statement and later explained:

[Defense Counsel]: My objection, Your Honor, I just want to make it clear before I start. My objection to [the prosecutor's] comments, I believe her comments regarding the welfare fraud case, those were to be suspended based on an understanding that she was to get a sentence at the penitentiary is not true and is not reflected in the record, but I have not read it today. My understanding is that she may have been contemplating, but that does not mean that's part of the agreement. And my guess is that is what she was contemplating, but I believe those comments are inappropriate.

[¶ 11] Fernandez claims that, by stating that "the drug cases were still outstanding and would most likely result in a Women's Center incarceration," the State breached the plea agreement reached in the welfare fraud case. She contends that the State was representing to the district court that, as part of the plea agreement in the welfare fraud case, Fernandez had agreed to accept a term of incarceration in the cocaine case.

After reviewing the transcripts from sentencing and the record as a whole, we are satisfied that the welfare fraud plea agreement was not breached.

[¶ 12] The prosecutor's statement did not violate the plea agreement. The State clearly represented to the district court that the welfare fraud plea agreement "was specifically to be addressed on the record to that case only." Nonetheless, Fernandez claims that the State impermissibly argued that incarceration was "contemplated" in the cocaine case and that Fernandez had agreed to such incarceration. At sentencing, the State and Fernandez engaged in a lengthy argument about what was and was not "contemplated" in the welfare fraud plea agreement and whether Fernandez had agreed to incarceration as part of that agreement. Throughout this discussion, however, the State was careful to clarify that the plea agreement was unrelated to any sentencing recommendation in the cocaine case:

[Prosecutor]: ... I want the record to be very clear that at the change of plea hearing on the welfare fraud case that was before this Court at that time, [defense counsel] stated on two different occasions acknowledgement that the agreement in that case only had to do with the welfare fraud and there were other charges pending in front of another Court and that we weren't going to discuss those.

[¶ 13] The district court, moreover, understood from the discussion at sentencing that the plea agreement did not include, nor was the prosecutor claiming that it included, any agreement regarding the cocaine charges:

THE COURT: Here's the way I understand the plea agreement: It was three to five, suspended, on the welfare fraud....

With regards to the cocaine charges, that's all up in the air that *there was no agreement with regards to that.* I think [defense counsel's] point was the probation in this case, the welfare fraud wasn't agreed to under a contemplation, under agreement, that it's okay we'll take probation on this because we're going to get jail on the cocaine—it's all up in the air with

regards to what is going to happen on the cocaine charges.

(Emphasis added.)

[¶ 14]   The State performed its part of the plea agreement by recommending suspended forty-two month to five year sentences to be served concurrently, with five years probation.   The State's argument for a term of incarceration in the cocaine case did not breach that agreement because, as the State made clear and the district court understood, the plea agreement in the welfare fraud case did not include any agreement in the cocaine case.   It is true that some confusion was created by the prosecutor's saying that the "agreement was entered into and brought before this Court *with the understanding that* the drug cases were still outstanding and would most likely result in a Women's Center incarceration."   (Emphasis added.)   One definition of "understanding" is, after all, "agreement."   *Merriam–Webster's Collegiate Dictionary* 1289 (10th ed.1999).   However, in the ensuing discussion, the prosecutor made it clear that such an understanding was not part of the agreement.   Accordingly, we find that the State did not breach the terms of the welfare fraud plea agreement and, therefore, affirm the judgment and sentence in Case No. 04–214.

### Cocaine Case Plea Agreement

[¶ 15]   Any plea agreement in the cocaine case was also unwritten.   We therefore look to the recitation of the plea agreement at the change-of-plea hearing to attempt to determine whether an agreement existed and, if so, the content of such agreement.   *Ford,* 2003 WY 65, ¶ 12, 69 P.3d at 411.

> [Defense attorney]: Miss Fernandez will be pleading to the counts of the information as charged.   The only understanding that I have is that her guilty plea and factual basis to these, the district attorney will agree that she's accepted responsibility for her acts.

[¶ 16]   Fernandez claims that the State breached its promise to "agree that she's accepted responsibility for her acts" when it made the following argument at the consolidated sentencing hearing:

> [Prosecutor]:   . . .   The bottom line is this, as was put on the record before Judge Grant, *she entered those pleas essentially cold with no sentencing agreement with the understanding that if she did accept responsibility for her ongoing drug trafficking behavior, that the state would take that into account in terms of its recommendation* as to how long she should go to Women's Center.
>
> The problem is that the presentence report indicates that she doesn't believe she has pled to possession with intent to deliver or any other delivery offenses and clearly that's not what the record shows.   She did in fact plead guilty to possession with intent to deliver and delivery of two counts and the additional counts of conspiracy.
>
> The facts are outlined on the record that indicate as to what behavior she was pleading guilty to, but she has now turned around and said, no, I'm guilty of agreeing to being in the drug business but I didn't do these other things.
>
> [Defense attorney] just indicated that that presentence report is substantially correct, so *I don't understand how she can now argue that that's acceptance of responsibility for that behavior.*

(Emphasis added.)

[¶ 17]   Defense counsel objected to parts of the statement dealing with the welfare fraud plea agreement, but not to these "responsibility" arguments.   The initial question we must answer, then, is whether to review this alleged error under the *de novo* standard set out above or under the plain error standard of W.R.Cr.P. 52(b) and W.R.A.P. 9.05 as applied in *Rutti,* 2004 WY 133, 100 P.3d 394.

[¶ 18]   In *Rutti,* 2004 WY 133, ¶ 40, 100 P.3d at 410, the appellant had agreed to plead guilty to two counts against him and, in exchange, the State agreed to dismiss two other counts charged in the information.   The appellant argued that his plea agreement was breached when the State dismissed the two counts without prejudice such that they could be charged again at a later date.   *Id.* However, Rutti never objected to the State's actions in the trial court.   *Id.* We said that the

first hurdle, then, is to prove plain error. Once again, "[p]lain error will not be assigned unless: (1) the record clearly reflects the incidents urged as error; (2) appellant is able to demonstrate violation of a clear and unequivocal rule of law; and (3) it is shown that a substantial right of the appellant was materially abridged." *Id.* at ¶ 41, 100 P.3d at 410 (*quoting Seymour v. State,* 949 P.2d 881, 883 (Wyo.1997)).

[¶ 19] Because Fernandez raises this issue for the first time on appeal, we think it clear that our review must be under the plain error standard. Therefore, we must first determine whether the record clearly reflects the incidents urged as error. The thrust of Fernandez's argument is that the plea agreement recited by Fernandez's attorney was breached by the State's argument at sentencing. As set out fully above, the record is clear as to which statements Fernandez is challenging.

[¶ 20] While the record is clear in that regard, Fernandez fails to show that, based on this record, a plea agreement actually existed. Therefore, we cannot find that the second prong of the plain error analysis has been satisfied. Under our plain error standard of review, an appellant must demonstrate a violation of a clear and unequivocal rule of law. As we have often stated, when a defendant pleads guilty in reliance on a promise from the State, the State must fulfill that promise. *Rutti,* 2004 WY 133, ¶ 42, 100 P.3d at 410. Fernandez has not shown this rule was violated because she has failed to show that she pled guilty in reliance on a plea agreement with the State.

[¶ 21] Because Fernandez failed to object to the prosecutor's comments, our review is difficult. As quoted above, the prosecutor spoke at length about Fernandez's failure to accept responsibility for the charges against her. The prosecutor also expressly characterized Fernandez's pleas in the cocaine case as "cold" and made "with no sentencing agreement." Prompted by the State's argument, the district court also discussed Fernandez's acceptance of responsibility in both cases in great detail:

THE COURT: ... This Court does have some questions, frankly, with regards to whether or not Ms. Fernandez is taking responsibility for her wrongful conduct. And notes in the presentence report on page six at the bottom of the page with regards to welfare fraud.

The probation officer reports that "The defendant maintains that her actions do not constitute fraud. Mainly, because Tim Pena is in fact not the father of her daughter. She accepted this plea agreement only as a measure of good faith because in doing so she thought she would receive leniency in a pending drug offense." Which is sort of reverse, I think, of the argument that I heard with regard to the state's position.

She also states that "The plea agreement is in fact a sort of scam perpetrated upon her by the district attorney's office. She further reports that the matter in her case has been complicated by the shuffle of defense attorneys and an attorney had not adequately represented her. She took the plea agreement because she believes that fighting the pending welfare case would be more difficult and only create more problems for her in other cases pending in court."

The Court would note, although the Court has not reviewed the record, the Court recalls numerous opportunities this Court had to observe Ms. Fernandez in court and while I can't point to anything in the record, the Court recalls—certainly had some questions that at all of those hearings there was a sense that Ms. Fernandez was very reluctant to be held accountable and take responsibility for her actions, although in the end she did enter a guilty plea to all three counts, which is certainly some sort of accountability. There's no doubt about that.

[¶ 22] However, even after these lengthy discussions, Fernandez failed to object. Indeed, at the district court level, Fernandez has never attempted to withdraw her guilty pleas in the cocaine case. Based on Fernandez's failure to object or attempt to withdraw her pleas, we are presented with an ambiguous and contradictory record.

[¶ 23] We interpret plea agreements under contract principles. *Rutti*, 2004 WY 133, ¶ 42, 100 P.3d at 410. A central tenet of contract law is that, in order for a contract to be formed, the parties must mutually assent to the same terms. *Parkhurst v. Boykin*, 2004 WY 90, ¶ 18, 94 P.3d 450, 459 (Wyo.2004). In the instant case, we are unable to conclude that Fernandez and the State mutually assented to a plea agreement. We are presented with only one statement in the record that tends to show that a plea agreement existed, namely that "the district attorney will agree that she's accepted responsibility for her acts." On the other hand, we are presented with pages of transcript which, if a plea agreement actually existed, would seem to violate any such unconditional agreement or, at the very least, prompt Fernandez to object to the State's arguments. We will not assume a plea agreement existed where the conduct of the parties does not support the existence of such an agreement and the terms recited in the record are not sufficiently definite to enable us to ascertain the content of the agreement. *See Roussalis v. Wyoming Med. Ctr., Inc.*, 4 P.3d 209, 231–32 (Wyo.2000) and *Engle v. First Nat'l Bank of Chugwater*, 590 P.2d 826, 831 (Wyo.1979).

[¶ 24] Because we must find any error to be clearly evident from the record, and because there was no objection or other attempt to clarify the record at trial, we cannot resolve ambiguity against the State and assume that it breached a plea agreement that was referred to only in passing by defense counsel and never mentioned at sentencing. Therefore, we affirm the judgment and sentence in Case No. 04–213.

## CONCLUSION

[¶ 25] The State did not breach the plea agreement entered in the welfare fraud case and we are unable to discern any plea agreement in the cocaine case.

[¶ 26] We affirm.