# IN THE SUPREME COURT, STATE OF WYOMING

# 2025 WY 43

**APRIL TERM, A.D. 2025**

**April 9, 2025**

TIRSO MUNGUIA,

Appellant
(Defendant),

v.

S-24-0042

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Edward A. Buchanan, Judge*

*Representing Appellant:*

*Office of the State Public Defender: Brandon Booth\*, Wyoming State Public Defender, Kirk A. Morgan, Chief Appellate Counsel, H. Michael Bennett, Senior Assistant Appellate Counsel.*

*Representing Appellee:*

*Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General, John J. Woykovsky, Senior Assistant Attorney General.*

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

\*An Order Substituting Brandon Booth for Ryan Roden was entered on October 10, 2024.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]   Tirso Munguia pleaded guilty to involuntary manslaughter pursuant to a plea agreement under which the State agreed to recommend an eight to twelve year sentence. After the district court revoked Mr. Munguia's bond for having contact with the victim's family, Mr. Munguia agreed the State was no longer bound by the sentencing recommendation. The State argued for the maximum sentence, and the court imposed a fifteen to twenty year sentence. Mr. Munguia appeals, claiming the court abused its discretion in revoking his bond and the State violated its plea agreement. We affirm.

## *ISSUES*

[¶2]   This appeal presents two issues:

1. Whether the district court abused its discretion in revoking Mr. Munguia's bond upon finding clear and convincing evidence of a violation.[1]

2. Whether the State breached its plea agreement with Mr. Munguia by invoking the "cold plea" provision and arguing for the maximum sentence after the district court revoked his bond.

## *FACTS*

[¶3]   On January 9, 2023, Mr. Munguia was a passenger in a vehicle, seated behind the driver. The victim was seated in the front passenger seat, and another individual was seated next to Mr. Munguia in the back passenger seat. The individual seated next to Mr. Munguia had a 9mm handgun placed between him and Mr. Munguia. Mr. Munguia picked up the gun, manipulated it, and discharged a round that struck the victim, fatally wounding her. Mr. Munguia was charged with involuntary manslaughter under Wyo. Stat. Ann. § 6-2-105(a)(ii) (2023).

---

[1] As a general rule, this Court does not consider pro se briefs from represented parties. However, an exception applies here. After appellate counsel filed an *Anders* brief, Mr. Munguia submitted a pro se brief arguing that the district court erred in finding a bond violation and that trial counsel was ineffective. Upon review, we denied counsel's motion to withdraw, finding that the bond revocation issue warranted further briefing. We expressly directed appellate counsel to brief that issue, yet the revised brief addressed only the State's breach of the plea agreement. Because appellate counsel failed to address this issue, we will consider Mr. Munguia's pro se challenge to the bond revocation.

Mr. Munguia raised a second issue in his pro se brief, claiming his counsel failed to inform him that the State could withdraw from the plea agreement and seek the maximum sentence. We need not address this argument, as it was disposed of by Appellant's appellate counsel in the *Anders* Brief filed on April 23, 2024. There, counsel stated, "Appellate Counsel can find no basis for a claim of ineffective assistance of counsel."

1

[¶4]    At his arraignment, Mr. Munguia pleaded not guilty. He later agreed to plead guilty to involuntary manslaughter in exchange for the State capping its sentencing recommendation at eight to twelve years of incarceration. The plea agreement contained a "cold plea" provision, stipulating that the State would not be bound by the sentencing recommendation if Mr. Munguia violated any laws or conditions of his bond.

[¶5]    At the change of plea hearing, Mr. Munguia pleaded guilty after receiving the required advisements under W.R.Cr.P. 11. The district court reviewed the plea agreement and emphasized that it was merely a recommendation and that the court was not bound by it. Mr. Munguia also acknowledged during this hearing that he understood that a bond violation could permit the State to argue for a harsher sentence.

[¶6]    The court granted a stipulated motion modifying Mr. Munguia's bond, releasing him from custody under the condition that he not contact the victim's family. Less than two weeks later, the State filed a petition to revoke his bond, alleging that Mr. Munguia had contact with the victim's family.

[¶7]    The district court conducted an evidentiary hearing on the State's petition to revoke bond, during which testimony established that the victim's family had organized and publicized a fundraiser for their daughter's foundation. Witnesses testified that the event was widely advertised, with signs, banners, and a tent with large, visible letters on it. There was testimony that a large red truck featuring the victim's face was being raffled off and that anyone entering the lot had to pass by it. The victim's parents testified that Mr. Munguia had direct and confrontational contact with both of them at the event.

[¶8]    Despite this evidence, Mr. Munguia asserted that when he went to the lot he was unaware of the fundraiser, believing he was attending a separate event known as "cruise night." These events consistently brought a large number of cars to the lot, with various groups hosting fundraisers at the same time.

[¶9]    The court found that it was unlikely Mr. Munguia entered the lot without noticing signs of the fundraiser. Mr. Munguia was found to have violated his bond conditions by clear and convincing evidence. As a result, the court revoked and reinstated Mr. Munguia's bond, placing him on house arrest.

[¶10]   At sentencing, the State asserted that due to the bond revocation, it was "relieved of its obligation under [the] agreement" to cap its sentencing recommendation. Mr. Munguia's counsel acknowledged that this was his understanding as well. After considering the arguments and testimony, the district court sentenced Mr. Munguia to fifteen to twenty years of incarceration. Mr. Munguia timely appealed.

## DISCUSSION

### I. The district court did not abuse its discretion in finding that Mr. Munguia violated his bond terms.

[¶11] Mr. Munguia, in his pro se brief, argues that the district court abused its discretion by finding that he violated his bond conditions by contacting the victim's family. He contends that the district court's determination was not supported by clear and convincing evidence.

[¶12] Although Wyoming case law has not explicitly addressed the standard of review for bond revocation hearings, our Court has consistently applied an abuse of discretion standard to similar determinations, such as probation revocations and bail bond forfeitures. *Bazzle v. State*, 2019 WY 18, ¶ 36, 434 P.3d 1090, 1099 ("A district court's decision to revoke probation and impose a sentence is discretionary and will not be disturbed unless the record demonstrates a clear abuse of discretion."); *Action Bailbonds v. State,* 2002 WY 103, ¶ 11, 49 P.3d 992, 993 (Wyo. 2002) (reviewing a district court's decision under Rule 46.4 to forfeit a bond for abuse of discretion and holding that it will only be overturned if it constitutes "patent abuse of discretion amounting to arbitrary and capricious action."). Accordingly, we will also apply the abuse of discretion standard in this context, where the challenge is to the trial court's determination that the defendant violated the conditions of his bond.

[¶13] This Court recently discussed the abuse of discretion standard:

> Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. A court abuses its discretion when it acts in a manner that exceeds the bounds of reason under the circumstances. The ultimate issue for this Court to determine on appeal is whether the trial court could reasonably conclude as it did.

*Boline v. JKC Trucking*, 2025 WY 27, ¶ 28, ___ P.3d___, ___ (Wyo. 2025) (cleaned up).

[¶14] Wyoming Rule of Criminal Procedure 46.4(c)(1) governs the revocation of pretrial release. Under this rule, the district court must find by clear and convincing evidence that the defendant violated a condition of release before issuing an order for revocation:

> (c) Violation of release condition. – A person who has been released under Rule 46.1, 46.2, or Rule 46.3 and who has

3

violated a condition of that release, is subject to a revocation of release and a prosecution for contempt of court.

(1) Revocation of Release. – The attorney for the state may initiate a proceeding for forfeiture of bond or revocation of an order of release by filing a motion with the court. A warrant may issue for the arrest of a person charged with violating a condition of release, and the person shall be brought before the court for a hearing. An order of revocation shall issue if, after a hearing, a judicial officer finds that there is:

(A) Probable cause to believe that the person has committed a federal, state, or local crime while on release; or

(B) Clear and convincing evidence that the person has violated any other condition of release.

[¶15]  Although Mr. Munguia does not explicitly frame it in these terms, the substance of his argument appears to be that he should not have been found in violation of his bond because the violation was not willful. This Court has not held that a finding of willfulness is required to revoke bond. However, to the extent willfulness is relevant to the district court's decision in the context of bond revocations, it remains a finding of fact that will not be disturbed on appeal unless clearly erroneous. *Hammell v. State*, 2025 WY 4, ¶10, 561 P.3d 776, 779 (Wyo. 2025).

[¶16]  Mr. Munguia emphasizes that at the bond revocation hearing, multiple neutral witnesses testified that they did not see any signs indicating that the event was a fundraiser and that neither he nor his friends saw anything online suggesting that the gathering was associated with the victim's family. However, we do not reweigh the evidence.

[¶17]  To determine whether the district court's factual findings were clearly erroneous, we apply the following standard:

We view the evidence in the light most favorable to the district court's determination and uphold its factual findings unless they are clearly erroneous because the trial court heard and weighed the evidence, assessed witness credibility, and made the necessary inferences and deductions from the evidence.

*Hammell*, 2025 WY 4, ¶ 7, 561 P.3d at 778 (cleaned up); *see also Brumme v. State*, 2018 WY 115, ¶ 11, 428 P.3d 436, 441 (Wyo. 2018); 36 C.J.S. Federal Courts § 615, Westlaw (Dec. 2024 Update) ("[O]nly the trial judge can be aware of variations in demeanor and tone of voice that bear so heavily on a listener's understanding of, and belief in, what is said."). We have carefully examined and considered the record in the light most favorable to the district court's determination. *See Brumme*, 2018 WY 115, ¶ 11, 428 P.3d at 441.

[¶18]   The district court made several factual findings in support of its conclusion that Mr. Munguia violated his bond conditions. The court found that at the event, there were multiple visible indicators that it was associated with the victim's family, including poster boards on every corner, a "ten by ten tent" near the entrance, and "signs [and] banners." The court also considered that Mr. Munguia's route took him directly past these signs, making it unlikely that he remained unaware of the nature of the gathering. The court weighed the witnesses' credibility, finding it incredible that "not one single one of them saw a sign," or knew of the event from social media.

[¶19]   The court acknowledged conflicting testimony regarding the nature of Mr. Munguia's interaction with the victim's father but found that contact did occur. In making its determination, the court considered the circumstances surrounding this contact, including Mr. Munguia's attempt to get back in the vehicle after the contact. While the court recognized that the victim's father may have escalated the situation, it emphasized that the initial responsibility for the contact "rest[ed] squarely with the defendant." Ultimately, the district court found that, given the circumstances, it was not credible that Mr. Munguia was unaware of the nature of the gathering and concluded that his presence at the event and his contact with the victim's family constituted a violation of his bond. The district court evaluated the evidence, rejected Mr. Munguia's explanation as implausible, and found that he knowingly violated the no-contact provision.

[¶20]   Given that the district court's factual findings are supported by the record, its decision to revoke Mr. Munguia's bond was well within its discretion. The court applied the correct legal standard, credited testimony it found reliable, and reasonably concluded that Mr. Munguia violated the explicit condition prohibiting contact with the victim's family. *See Brumme*, 2018 WY 115, ¶ 11, 428 P.3d at 441; *Mapp v. State*, 929 P.2d 1222, 1225-26 (Wyo. 1996) (holding that a district court's revocation decision is upheld if there is "evidence that it made a conscientious judgment, after hearing the facts[.]"). There was no error in the court's decision to revoke Mr. Munguia's bond.

## II.   The State did not breach the plea agreement by withdrawing its sentencing recommendation.

[¶21]   Mr. Munguia next contends that the State breached the plea agreement by withdrawing its sentencing recommendation following his bond revocation. While he asserts that the term "contact" is unambiguous, the thrust of the argument seems to be that it is ambiguous as applied to the specific facts of the bond revocation hearing. Specifically, he argues that the court's interpretation effectively imposed a broad prohibition, barring him from being anywhere the victim's family might be, rather than requiring an affirmative contact to establish a bond violation.

[¶22]   Whether the State violated a plea agreement is generally reviewed de novo, but where no objection was raised below, our review is for plain error. *Springstead v. State*,

2020 WY 47, ¶ 7, 460 P.3d 1117, 1120 (Wyo. 2020); *Christensen v. State*, 2010 WY 95, ¶ 6, 234 P.3d 1229, 1230 (Wyo. 2010). "To establish plain error, an appellant must show: '(1) the record clearly reflects the alleged error; (2) a violation of a clear and unequivocal rule of law in a clear and obvious manner; and (3) the appellant was denied a substantial right which caused the appellant material prejudice.'" *Dickerson v. State*, 2025 WY 26, ¶ 16, 564 P.3d 587, 595 (Wyo. 2025) (quoting *Iverson v. State*, 2025 WY 19, ¶ 13, 563 P.3d 496, 499 (Wyo. 2025)). Mr. Munguia did not object to the State deviating from its sentencing recommendation, so we review for plain error.

[¶23] The parties agree that the record shows the State invoked the cold plea provision and sought the maximum sentence, so we turn to whether a clear and unequivocal rule of law was violated. A plea agreement is a contract, and when a defendant materially breaches its terms, the State is no longer bound by its obligations. *See Springstead*, 2020 WY 47, ¶ 16, 460 P.3d at 1121 (holding that a defendant's bond violations constituted a material breach under the plea agreement, relieving the State of its obligation to give its agreed-upon sentencing recommendation). Here, the terms were clear: Mr. Munguia's bond required strict adherence to the no-contact provision, and his violation relieved the State of its duty to recommend a reduced sentence. Unlike *Grater v. State*, where ambiguity in the agreement's terms warranted further inquiry, there is no ambiguity here; the agreement prohibited any contact. 2020 WY 102, ¶ 10, 468 P.3d 1116, 1119 (Wyo. 2020).

[¶24] Because the district court's finding of a bond violation was supported by clear and convincing evidence, and the plea agreement explicitly allowed the State to withdraw its recommendation upon such a violation, the State did not breach the agreement. Mr. Munguia's argument fails under plain error review, as no clear and unequivocal rule of law was transgressed.

## *CONCLUSION*

[¶25] The district court did not abuse its discretion in revoking Mr. Munguia's bond, as its decision was supported by clear and convincing evidence. The State also did not breach the plea agreement because Mr. Munguia's bond violation triggered the cold plea provision, relieving the State of its obligation to recommend a reduced sentence. Finding no error, we affirm.