# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 47

**APRIL TERM, A.D. 2020**

**April 6, 2020**

CLIFFORD GILES SPRINGSTEAD,

Appellant
(Defendant),

v.

S-19-0201

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane Lozano, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; David E. Westling, Senior Assistant Appellate Counsel.

*Representing Appellee:*

Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    Clifford Springstead was charged with failure to register as a sex offender.  He entered into a plea agreement where in exchange for his guilty plea, the State agreed to recommend a two- to three-year prison sentence, suspended in favor of two years' probation.  The agreement incorporated Mr. Springstead's bond conditions which required he not be arrested or cited for a violation of the law and entitled the State to deviate from the agreement if Mr. Springstead violated its terms.  Before sentencing, Mr. Springstead received two citations for criminal trespass and one citation for false reporting.  The State recommended the maximum sentence of four and one-half to five years, which the district court imposed.  Mr. Springstead appeals, claiming the State breached the plea agreement.  We affirm.

## ISSUE

[¶2]    We rephrase the issue:

> Did Mr. Springstead's breach of the plea agreement release the State from its obligation to recommend a reduced sentence?

## FACTS

[¶3]    Mr. Springstead was charged with failure to register as a sex offender under Wyo. Stat. Ann. § 7-19-302.[1]  At his arraignment, he entered a plea of not guilty.  He reached a plea agreement with the State under W.R.Cr.P. 11(e)(1)(B)[2] where he agreed to plead guilty to one count of failure to register as a sex offender in exchange for the State's recommendation of not less than two years and not more than three years in prison, suspended in favor of two years of supervised probation.  The plea agreement also provided:

> THE DEFENDANT understands and agrees to obey all laws, all court orders, ***including bond conditions***, . . . and shall not commit any acts of violence pending sentencing.  Defendant's violations of any of these provisions are a basis for the State to deviate from the plea agreement. . . . The Defendant agrees

---

[1] Mr. Springstead's duty to register arose from his 1989 conviction for first-degree sexual assault.  He was also convicted of attempted second-degree murder, aggravated robbery, and kidnapping.

[2] W.R.Cr.P. 11(e)(1)(B) provides that when a defendant enters a guilty plea pursuant to a plea agreement, the State will "[m]ake a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court[.]"

that any violation of this agreement, any laws, or any court order, ***including bond conditions*** . . . may entitle the State to withdraw its sentencing recommendation and that the Defendant shall **NOT** be allowed to withdraw the plea(s) entered.

(First and second emphasis added.) One of the conditions of Mr. Springstead's bond was that he "***not be arrested or cited for any violation of the law*** other than minor traffic offenses." (Emphasis added.) At a change of plea hearing, after Mr. Springstead acknowledged that he understood the terms of the agreement, the district court entered his guilty plea.

[¶4]   Following the change of plea and before the sentencing hearing, Mr. Springstead received a citation for criminal trespass. The State moved to revoke his bond and the court issued a bench warrant for his arrest. By the time of his bond revocation hearing, Mr. Springstead had received two additional citations—one for criminal trespass and one for false reporting.[3] At that hearing, the State announced that it "would not be standing behind" the plea agreement. The State, later, filed a "Notice of State's Intent to Deviate from Plea Agreement" making clear that it would seek the maximum sentence for Mr. Springstead. Mr. Springstead filed no response or objection.

[¶5]   At sentencing, the State recommended that Mr. Springstead be sentenced to four to five years in prison. Mr. Springstead urged the district court to reject the State's recommendation and to ignore his pending misdemeanor citations. He did not argue that the sentencing recommendation was a breach of the plea agreement. Instead, Mr. Springstead conceded that the plea agreement was now inapplicable and said that he was "not going to necessarily ask that the Court follow [the original] recommendation." He argued for a sentence of four and one-half to five years, suspended in favor of five years' probation. The court sentenced Mr. Springstead to four and one-half to five years in prison. Mr. Springstead filed a timely appeal.

## DISCUSSION

***Did Mr. Springstead's breach of the plea agreement release the State from its obligation to recommend a reduced sentence?***

[¶6]   Mr. Springstead argues that the State breached the plea agreement by refusing to recommend a two- to three-year sentence, suspended in favor of probation. He also claims there was no breach of the agreement because he had not been found guilty of the

---

[3] The motion for bond revocation was based on the first citation for criminal trespass. The district court acknowledged all three citations at the bond revocation hearing and again at the sentencing.

cited conduct; the State could not deviate from the agreement but was required instead to withdraw from it prior to sentencing; and the agreement was, essentially, a contract of adhesion. We reject these arguments. We find that Mr. Springstead violated the plea agreement by receiving citations in contravention of his bond conditions, and his breach released the State from its obligation to recommend a reduced sentence.

[¶7]    Generally, we review the question of whether the State violated a plea agreement de novo. *Mendoza v. State*, 2016 WY 31, ¶ 26, 368 P.3d 886, 894 (Wyo. 2016); *Ford v. State*, 2003 WY 65, ¶ 8, 69 P.3d 407, 410 (Wyo. 2003); *Schade v. State*, 2002 WY 133, ¶ 5, 53 P.3d 551, 554 (Wyo. 2002). "However, when a party fails to raise the issue of breach of a plea agreement with the district court, we review the alleged breach for plain error." *Christensen v. State*, 2010 WY 95, ¶ 6, 234 P.3d 1229, 1230 (Wyo. 2010); *see also Fernandez v. State*, 2006 WY 8, ¶¶ 18–19, 126 P.3d 111, 115–16 (Wyo. 2006). "[P]lain error exists when 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him." *Mercer v. State*, 2012 WY 54, ¶ 8, 273 P.3d 1100, 1102 (Wyo. 2012) (citations omitted). Mr. Springstead did not raise the issue of the State's breach of the plea agreement or raise any of his other arguments to the district court. We therefore apply the plain error standard of review. *Id.*

[¶8]    Under plain error, the appellant must first establish that "the record clearly shows the incident alleged as error[.]" *Bazzle v. State*, 2019 WY 18, ¶ 28, 434 P.3d 1090, 1097 (Wyo. 2019). Here, the record clearly reflects that the State declined to stand behind the plea agreement in recommending the maximum sentence.

[¶9]    We turn next to the question of whether the error transgressed a clear and unequivocal rule of law. *Mercer*, ¶ 8, 273 P.3d at 1102. A plea agreement is a contract between the State and the defendant. *Mendoza*, ¶ 26, 368 P.3d at 895 (quoting *Deeds v. State*, 2014 WY 124, ¶ 14, 335 P.3d 473, 478 (Wyo. 2014)). As such, "[p]rinciples of general contract law guide our analysis of the [parties'] obligations under the agreement." *Gibbs v. State*, 2008 WY 79, ¶ 10, 187 P.3d 862, 865 (Wyo. 2008) (citations omitted).

[¶10]  "As in a contract, courts will not release a party from its obligations under a plea agreement unless another party materially and substantially breaches the agreement." *Montano v. State*, 2019 WY 34, ¶ 13, 437 P.3d 838, 842 (Wyo. 2019).

> A material or substantial breach is one that goes to the whole consideration of the agreement. Several factors are relevant to whether a breach is material or substantial, including the extent to which the non-breaching party will be deprived of the benefit it reasonably expected and the extent to which the

3

> breaching party's conduct comports with the standards of
> good faith and fair dealing.

*Schade*, ¶ 5, 53 P.3d at 554 (quoting *Browning v. State*, 2001 WY 93, ¶ 32, 32 P.3d 1061, 1071 (Wyo. 2001)). To determine whether a party has breached a plea agreement, we "(1) examine the nature of the promise; and (2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time the plea was entered." *Montano*, ¶ 13, 437 P.3d at 842 (quoting *Mendoza*, ¶ 26, 368 P.3d at 895).

[¶11]   The first issue we must resolve is whether Mr. Springstead's conduct constituted a material and substantial breach of the plea agreement, releasing the State from its performance. In determining whether a breach occurred, we begin by examining the terms of the agreement. *Montano*, ¶ 14, 437 P.3d at 842. The plea agreement required Mr. Springstead to "obey all laws [and] all court orders, ***including bond conditions***." (Emphasis added.) The bond required, among other things, that Mr. Springstead "not be arrested or cited for any violation of the law other than minor traffic offenses." The plea agreement included a provision that Mr. Springstead's violation of any provision of the agreement was a basis for the State to deviate from it and that violation "may entitle the State to withdraw its sentencing recommendation . . . ." The nature of the promise was clear. When language is clear and unambiguous, we enforce the agreement according to its terms without looking beyond the four corners of the contract. *Montano*, ¶ 14, 437 P.3d at 842 (quoting *Mendoza*, ¶ 27, 368 P.3d at 895).

[¶12]   It is uncontested that Mr. Springstead received three citations after he entered into the plea agreement with the State, in violation of his bond conditions. This conduct went "to the whole consideration of the agreement." *Browning*, ¶ 32, 32 P.3d at 1071. It "deprived [the State] of the benefit it reasonably expected"—namely, that Mr. Springstead would comply with the agreement and receive no citations for violation of the law in exchange for its recommendation of a reduced sentence. *Id.* It is well established that "a defendant will be held to the clear terms of a lawful plea agreement." *Henry v. State*, 2015 WY 156, ¶ 13, 362 P.3d 785, 789 (Wyo. 2015). Mr. Springstead materially and substantially breached the plain terms of the agreement. "It is axiomatic that, if a defendant fails to comply with a plea agreement, the state is not bound by that agreement." *Schade*, ¶ 8, 53 P.3d at 555. The State did not violate a rule of law by deviating from the plea agreement in the face of Mr. Springstead's breach, so we need not reach the last prong of plain error—whether Mr. Springstead was materially prejudiced.

[¶13]   Mr. Springstead raises several other arguments. He contends that the State did not provide proof that he breached the plea agreement, ignoring the copy of his citation attached to the State's petition to revoke his bond conditions. Mr. Springstead alternatively claims that a citation alone, without an underlying adjudication, does not prove guilt and therefore does not establish a violation of his bond conditions. We defer

4

to the plain and unambiguous language of the plea agreement. *Montano*, ¶ 14, 437 P.3d at 842. The plea agreement required compliance with the bond conditions, one of which was that Mr. Springstead not be **cited** for any violation of the law. This Court has held that bond violations breach a plea agreement despite their being "unproven" at the time of sentencing. *Gibbs*, ¶¶ 6–7, 187 P.3d at 864–65.

[¶14] Mr. Springstead next argues that the State's remedy was to move to withdraw the plea agreement, not to deviate from it. This argument also overlooks the language of the agreement providing that the State could deviate from the agreement if Mr. Springstead violated its terms. The State's "Notice of State's Intent to Deviate from Plea Agreement" put Mr. Springstead on notice that the agreement would no longer control the sentencing recommendation. We enforce a plea agreement under the principles of contract law and adhere to the four corners of the agreement. *Montano*, ¶ 14, 437 P.3d at 842. While the agreement permitted the State to withdraw in the event of Mr. Springstead's violation, it did not require withdrawal.

[¶15] In his final argument, Mr. Springstead contends that the plea agreement contained boilerplate terms and was analogous to a contract of adhesion, similar to insurance contracts. "A contract of adhesion is one in which one party to the agreement has little or no bargaining power to vary the terms thereof." *Durdahl v. Nat'l Safety Assocs., Inc.*, 988 P.2d 525, 529 (Wyo. 1999). "Because insurance policies represent contracts of adhesion where the insured has little or no bargaining power to vary the terms, if the language is ambiguous, the policy is strictly construed against the insurer," but "the language will not be 'tortured' to create an ambiguity." *Hurst v. Metro. Prop. & Cas. Ins. Co.*, 2017 WY 104, ¶ 12, 401 P.3d 891, 895 (Wyo. 2017) (quoting *N. Fork Land & Cattle, LLLP v. First Am. Title Ins. Co.*, 2015 WY 150, ¶ 14, 362 P.3d 341, 346 (Wyo. 2015)). We find no ambiguity in the plain language of the plea agreement. Mr. Springstead indicated he read and understood the terms of the agreement and was represented by counsel. Mr. Springstead knowingly and voluntarily entered into a plea agreement which comported with the provisions of W.R.Cr.P. 11. *See Henry*, ¶ 18, 362 P.3d at 790. A valid plea agreement under the Wyoming Rules of Criminal Procedure is not, per se, a contract of adhesion.

## *CONCLUSION*

[¶16] Mr. Springstead's failure to comply with the bond conditions contained in the plea agreement released the State from its obligation to recommend a reduced sentence. His remaining arguments are without merit. Affirmed.