# IN THE SUPREME COURT, STATE OF WYOMING

# 2020 WY 102

APRIL TERM, A.D. 2020

*August 6, 2020*

DONALD ALLEN GRATER JR.,

**Appellant**
(Defendant),

v.                                                                    S-19-0239

**THE STATE OF WYOMING,**

**Appellee**
(Plaintiff).

*Appeal from the District Court of Carbon County*
*The Honorable Dawnessa A. Snyder, Judge*

*Representing Appellant:*
Office of the State Public Defender: Diane M. Lozano, Wyoming Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Desiree Wilson, Senior Assistant Appellate Counsel.

*Representing Appellee:*
Bridget L. Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Timothy P. Zintak, Assistant Attorney General.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]   Donald Allen Grater Jr. accepted the State's offer and pleaded guilty to felony possession of marijuana.  In exchange for his guilty plea, the State agreed to dismiss a misdemeanor possession of methamphetamine charge and recommend the court suspend Mr. Grater's sentence in favor of two years supervised probation.  At sentencing, however, the State reneged on its promise to recommend a suspended sentence, stating it withdrew the plea agreement after the court had accepted Mr. Grater's plea because Mr. Grater violated the terms of his bond.  Mr. Grater claims the State breached the plea agreement; however, because Mr. Grater does not show he was prejudiced by the State's breach, if any, we affirm.

## ISSUE

[¶2]   Was Mr. Grater prejudiced by the State's breach, if any, of the written plea agreement?

## FACTS

[¶3]   Rawlins, Wyoming police met Mr. Grater on December 10, 2018, after receiving a report he was soliciting money from people in the Walmart parking lot.  Mr. Grater admitted to Officer Matthew Harnisch he was asking people for money.  When Mr. Grater opened the door of his car to get his ID, Officer Harnisch noticed the smell of marijuana. When asked if he had marijuana in the car, Mr. Grater admitted he did and provided Officer Harnisch a glass jar full of marijuana.  Mr. Grater explained he got the marijuana in California and used it for medicinal purposes.  Officer Harnisch then placed Mr. Grater in investigative detention.  He and Sergeant Chris Craig searched Mr. Grater's car and found more than four pounds of marijuana and a pipe and clear bag with suspected methamphetamine residue.  Based on this evidence, the State charged Mr. Grater with one count of felony possession of marijuana, Wyo. Stat. Ann. §§ 35-7-1031(c)(iii) and 35-7-1014(d)(xiii), and one count of misdemeanor possession of methamphetamine, §§ 35-7-1031(c)(i)(C) and 35-7-1016(d)(ii).

[¶4]   Mr. Grater waived his preliminary hearing.  Prior to his arraignment, the State offered, and Mr. Grater accepted, a written plea agreement.  In exchange for Mr. Grater's guilty plea to the felony count, the State agreed to dismiss the misdemeanor count and recommend a two- to five-year sentence, suspended in favor of two years of supervised probation.  Relevant to this appeal, the plea agreement stated:

> This offer is made pursuant to W.R.Cr.P. 11(e)(i)(B) and will
> expire on *[Mr. Grater's] District Court Arraignment* or in the

1

event that [Mr. Grater] violates any condition of his bond or any law of any jurisdiction.

(Emphasis in original.)

[¶5]   The district court accepted Mr. Grater's guilty plea and entered the felony conviction following his December 27, 2018 arraignment.  The court reserved its sentencing decision, advising Mr. Grater it could, but was not bound, to accept the State's sentencing recommendation.  The court released Mr. Grater on bond pending his sentencing hearing, stating:

> Mr. Grater, I don't want you to be unsuccessful on bond.  I don't want you to go use marijuana.  I don't want you to not go to Probation and Parole or not show back up for court, because what will happen is if you don't show back up or if you violate any of the terms of your bond, the Court will issue a warrant. And you will come back here, and the deal that the State has made with you is not, in all likelihood, going to be accepted by the Court.

[¶6]   The State moved to revoke Mr. Grater's bond on January 22, 2019.  At the bond revocation hearing on April 12, following his arrest and return to Wyoming from Indiana, Mr. Grater admitted to the first alleged bond violation—his failure to report to Probation and Parole for his presentence investigation interview.[1]  At Mr. Grater's July 15, 2019 sentencing hearing, the State told the court that earlier in the month it had notified Mr. Grater's attorney that it was "withdrawing" the plea agreement because Mr. Grater had violated his bond conditions.  The State then recommended the district court sentence Mr. Grater to two to four years' incarceration—not a suspended probation sentence.  In response, Mr. Grater again explained why he failed to report to Probation and Parole and gave his version of the circumstances pertaining to additional misdemeanor charges the State had filed against him.  The court considered probation but found it inappropriate due to Mr. Grater's many felony convictions.  The court sentenced Mr. Grater to one to three years' incarceration.  This appeal followed.

---

[1] The State also alleged Mr. Grater had been cited for property destruction for breaking a chair at the Carbon County Jail and had been arrested and charged with misdemeanor interference with a peace officer.  The State withdrew those two alleged bond violations after Mr. Grater admitted to the first alleged violation. The court revoked Mr. Grater's bond, then imposed a $5,000 cash bond and reset bond conditions to prohibit Mr. Grater from leaving Carbon County or Wyoming.  Mr. Grater wrote to the court stating he should not have admitted he was guilty, his attorney did not have a plan, and he deserved to be released on his own recognizance because county officials were negligent, and he was being profiled.  At the bond modification hearing, the court addressed Mr. Grater's concerns about his attorney and asked whether he wanted to withdraw his guilty plea.  Mr. Grater confirmed he did not want to withdraw his plea and wanted to proceed; the court reminded him it was not bound by the sentencing recommendation in the plea agreement, then imposed a $5,000 signature bond with conditions that permitted Mr. Grater to leave Wyoming.

## STANDARD OF REVIEW

[¶7]    We typically review whether the State violated a plea agreement de novo. *Springstead v. State*, 2020 WY 47, ¶ 7, 460 P.3d 1117, 1120 (Wyo. 2020) (citations omitted).  Here, however, we review for plain error because Mr. Grater did not raise the issue of the State's alleged breach with the district court.  W.R.Cr.P. 52(b); W.R.A.P. 9.05; *Springstead*, ¶ 7, 460 P.3d at 1120.  Mr. Grater bears the burden of proving plain error. *Mercer v. State*, 2012 WY 54, ¶ 8, 273 P.3d 1100, 1102 (Wyo. 2012).  Plain error exists if the alleged error: (1) "clearly appears in the record"; (2) "clearly and obviously violates a clear and unequivocal rule of law"; and (3) affects a defendant's "'substantial right' to his material prejudice." *Nielsen v. State*, 2018 WY 132, ¶ 23, 430 P.3d 740, 748 (Wyo. 2018) (quoting *Cole v. State*, 2017 WY 87, ¶ 9, 399 P.3d 618, 620 (Wyo. 2017)).  Given the error Mr. Grater asserts on appeal, the right "he must show to have been affected is his sentence." *Puckett v. United States*, 556 U.S. 129, 142 n.4, 129 S.Ct. 1423, 1433 n.4, 173 L.Ed.2d 266 (2009).  Mr. Grater must show "there is a reasonable probability" his sentence would have been more favorable had the error not occurred. *See Larkins v. State*, 2018 WY 122, ¶ 94, 429 P.3d 28, 50 (Wyo. 2018).

## DISCUSSION

[¶8]    The State concedes Mr. Grater has satisfied the first prong of plain error—the record demonstrates the State agreed to recommend a suspended sentence but failed to do so at Mr. Grater's sentencing.  The question whether Mr. Grater has satisfied the second prong— whether the State's failure to make the agreed upon sentencing recommendation clearly and obviously violated a clear and unequivocal rule of law—is more difficult to answer.

[¶9]    There exists a clear and unequivocal rule of law that the State must strictly adhere to the terms of its valid plea agreement with Mr. Grater unless Mr. Grater "materially and substantially breaches the [plea] agreement." *Springstead*, ¶ 10, 460 P.3d at 1121 (quoting *Montano v. State*, 2019 WY 34, ¶ 13, 437 P.3d 838, 842 (Wyo. 2019)).  Mr. Grater contends he did not materially and substantially breach the plea agreement, but the State did.  The State responds it "could be released from the plea agreement if [Mr.] Grater 'violate[d] any condition of his bond or any law of any jurisdiction,'" which he admittedly did.  Relying on *Springstead*, the State argues "bond violations breach a plea agreement despite their being 'unproven' at the time of sentencing[,]" and then invites us to "conclude that, where a district court finds a violation of a condition of pretrial release sufficient for revocation under Rule 46.4(c)(1) of the Wyoming Rules of Criminal Procedure, a material or substantial breach of a plea agreement has been established."  The State goes too far.  For to accept its invitation would be to impermissibly ignore the express terms of the plea agreement.  We have long held that when "determining whether a breach occurred, we begin by examining the terms of the agreement." *Springstead*, ¶ 11, 460 P.3d at 1121 (citing *Montano*, ¶ 14, 437 P.3d at 842).  We enforce the agreement according to its terms so long as its language is clear and unambiguous. *Montano*, ¶ 14,  437 P.3d at 842.

[¶10]   The plea agreement in this case nowhere states that Mr. Grater is deemed to have breached the agreement (and thereby release the State from its obligations under the agreement) if the district court finds sufficient grounds to revoke his bond under W.R.Cr.P. 46.4(c)(1).  And, quite unlike the plea agreement in *Springstead*, this agreement did not expressly require Mr. Grater to "obey all laws [and] all court orders, ***including bond conditions***[,]" or include a provision stating that his violation of any term of the agreement "may entitle the State to withdraw its sentencing recommendation[.]"  *Springstead*, ¶ 11, 460 P.3d at 1121 (emphasis in original).  The nature of the State's promise to Mr. Grater is not nearly so clear as the conditional promise made in *Springstead*.  Mr. Grater's plea agreement merely states that the State's ***offer*** under W.R.Cr.P. 11(e)(i)(B) ***will expire*** on Mr. Grater's arraignment or if Mr. Grater violates any condition of his bond.  Though we cannot help but remark how this language unnecessarily complicates any analysis concerning which, if either, party may have breached the agreement, and when—Mr. Grater had already accepted the State's offer and the district court had accepted his plea when he admittedly violated a condition of his bond—we decline to undertake that analysis, as our decision more definitively turns on the third plain error prong.

[¶11]   To prevail on the third prong Mr. Grater must establish prejudice by demonstrating a reasonable probability that his sentence would have been more favorable had the State not breached the plea agreement.  *See Nielsen*, ¶ 23, 430 P.3d at 748; *Puckett*, 556 U.S. at 142 n.4, 129 S.Ct. at 1433 n.4; *Larkins*, ¶ 94, 429 P.3d at 50.  He has not met this burden.  The court twice advised Mr. Grater that it was not bound to accept the State's sentencing recommendation.  When it released Mr. Grater on bond the first time, the court further warned him that if he did not go to Probation and Parole or show back up for court, the court would, "in all likelihood," reject the deal the State made with him.  Mr. Grater admitted he did not report to Probation and Parole for his presentence investigation interview as instructed.  In addition, the presentence investigation report submitted to and reviewed by the court concluded Mr. Grater was "not a fit candidate for community supervision."  And finally, rather than suggest it was relying in any way on the State's recommended two- to four-year sentence when it sentenced Mr. Grater to a shorter, one- to three-year period of incarceration, the court told Mr. Grater that it had considered probation but found it inappropriate due to his many felony convictions.  This record forecloses any reasonable probability Mr. Grater would have been sentenced to supervised probation had the State recommended it.

[¶12]   Affirmed.