# IN THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 66

APRIL TERM, A.D. 2026

June 17, 2026

MICHAEL SCOTT HUGHES,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-25-0238

*Appeal from the District Court of Natrona County*
The Honorable Catherine E. Wilking, Judge

*Representing Appellant:*
Ryan A. Semerad, Fuller & Semerad, LLC, Casper, Wyoming.

*Representing Appellee:*
Keith G. Kautz, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General. Argument by Mr. Burton.

*Before BOOMGAARDEN, C.J., GRAY, FENN, JAROSH, and HILL, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**JAROSH, Justice.**

[¶1]   Pursuant to a plea agreement, Michael Hughes pleaded guilty to five counts of aggravated assault and battery and one count of misdemeanor reckless endangerment after shooting a gun into his ceiling and at law enforcement during a standoff at his apartment. In the plea agreement, the State agreed to cap its sentencing recommendation at five years in prison on each of the assault and battery charges and one year on the reckless endangerment charge, with all sentences to run concurrently. At sentencing, the State complied with the terms of the plea agreement and made the agreed-upon recommendations. While the district court sentenced Mr. Hughes to four to five years for each of the assault and battery charges and one year on the reckless endangerment charge, it ordered the sentences to run consecutively instead of concurrently. Mr. Hughes appealed, asserting the district court improperly treated his plea agreement as a nonbinding recommendation under Wyoming Rule of Criminal Procedure (W.R.Cr.P.) 11(e)(1)(B) rather than a stipulated sentencing agreement under W.R.Cr.P. 11(e)(1)(C). Finding no error, we affirm.

## ISSUES

[¶2]   Mr. Hughes presents two issues for review on appeal, which we rephrase as:

> 1.   Did the district court misconstrue the parties' plea agreement as an agreement made under W.R.Cr.P. 11(e)(1)(B)?
>
> 2.   Did the district court err in accepting the plea agreement or otherwise fail to make a sufficient record for rejecting the State's sentencing recommendation?

## FACTS AND PROCEEDINGS

[¶3]   During the late evening hours of August 22, 2024, Brianne Hughes called a police dispatch number to report that her soon-to-be ex-husband, Mr. Hughes, was threatening to commit suicide. The two were married for ten years but were estranged. Ms. Hughes reported she had a video call with Mr. Hughes and could tell he was intoxicated and had dilated pupils. She also informed dispatch that Mr. Hughes was a Casper Police Officer and that when she mentioned she was going to call dispatch, Mr. Hughes responded that he would "shoot a motherf***er through the door." He then asked Ms. Hughes to tell their children that he loved them.

[¶4]   Due to his employment with the Casper Police Department, Natrona County Sheriff deputies were dispatched to Mr. Hughes' apartment. The deputies established that Mr.

1

Hughes was inside his Quail Run apartment and confirmed he was not on duty. They also discovered Mr. Hughes' girlfriend, Catlyn Lubenow, outside the Quail Run apartment. Ms. Lubenow stated she had been alone with Mr. Hughes in the apartment and was reluctant to leave, given his condition. Ms. Lubenow told deputies that Mr. Hughes brought guns into his kitchen, placed a handgun inside his mouth several times, and made suicidal statements. Mr. Hughes told Ms. Lubenow to leave, and when she did not leave, he fired a pistol round into the ceiling of the apartment. Ms. Lubenow left and confirmed with deputies that Mr. Hughes was now alone in the apartment and had been drinking.

[¶5] The deputies started the process of evacuating the apartment units at Quail Run. The occupant in the apartment directly upstairs from Mr. Hughes received a phone call from the deputies telling her to shelter inside her bathtub. Several hours later, she and two others (including her teenage son) were evacuated from their apartment and, as they were leaving, the upstairs occupant stepped on something hard in her living room. She later discovered the object was a bullet fired from downstairs that got caught in the carpet after penetrating the concrete floor to her apartment.

[¶6] The Natrona County Sheriff's Office activated a tactical team and crisis negotiators who remained in contact with Mr. Hughes through the early morning hours of August 23, 2024. Mr. Hughes refused to leave the apartment and repeatedly threatened to kill deputies and himself. Negotiators reported Mr. Hughes sounded intoxicated. He confirmed he had been drinking heavily and intended to continue drinking alcohol. Deputies eventually expanded their evacuation to other buildings within the apartment complex.

[¶7] The standoff ensued throughout the day of August 23, 2024. Mr. Hughes called and texted friends, family, co-workers, and the crisis negotiators. His communications displayed a wide range of emotions including suicidal thoughts. Mr. Hughes also repeatedly attempted to entice law enforcement to enter the apartment and threatened to kill anyone that entered. Law enforcement heard other gunshots but could not discern the location or number of rounds fired. The tactical team also flew a drone into the apartment through a broken window, but Mr. Hughes captured and damaged the drone before throwing it back out the window.

[¶8] Later that afternoon, as a five-member tactical team was removing the curtains from the broken front window of the apartment, Mr. Hughes fired a round through the window where the tactical team was located. The round did not hit any of the tactical team members but traveled in the direction of an unoccupied playground and another building.

[¶9] At 4:15 PM that same afternoon, Mr. Hughes handcuffed himself inside the apartment and allowed the tactical team to take him into custody. Three handguns and three spent shell casings were found in the apartment.

2

[¶10]   The State charged Mr. Hughes with five counts of felony aggravated assault and battery for shooting at the five deputies from the tactical team, one count of felony property destruction for damaging the drone and the apartment, and one count of misdemeanor reckless endangering for firing a gun into his ceiling.   At his arraignment, Mr. Hughes pleaded not guilty to all seven charges.

### *Change of Plea Hearing*

[¶11]   Approximately two months later, Mr. Hughes requested a change of plea hearing. The parties did not disclose the terms of the plea agreement in advance, so the district court asked the State to outline the terms of the plea agreement on the record.   The State described the agreement as follows:

> It's anticipated the defendant will be entering guilty pleas to all counts with the exception of Count Six.
>
> The State has agreed to cap its sentencing argument on Counts One through Five at five years at the Wyoming State Penitentiary.   Count Seven is a misdemeanor count which carries a one-year penalty.   All those sentences would run concurrent to one another.
>
> The defendant would be responsible for any restitution including any restitution on the dismissed count.
>
> There would be the standard monetary obligations, and there would be the customary cold plea provision, meaning should there be a violation of law, bond, failure to cooperate with the ASI or PSI, these pleas would revert to cold pleas, and he would not be allowed to withdraw his plea.

The district court asked whether that was Mr. Hughes' counsel's understanding, and Mr. Hughes' counsel responded, "It is, your honor."   The district court then placed Mr. Hughes under oath.   The district court reiterated the plea agreement to Mr. Hughes:

> As it's been presented, you would enter guilty pleas to Counts One through Five and Count Seven.
>
> In exchange for you pleading guilty to those charges, the State has agreed to dismiss Count Six.   And the State has also agreed, at your sentencing hearing, that they would cap or they would limit their sentencing argument at no more than five years in

3

prison on the felony counts, One through Five; obviously, Count Seven is a one-year misdemeanor.

The State has agreed that they would limit their request of the Court to no more than five years in prison. You and [your counsel] are free to argue for whatever sentence you believe to be appropriate on those counts.

But there is an agreement by the State that, whatever sentence you receive on Counts One through Five and Count Seven, that they would run concurrently or at the same time, together.

You have agreed to pay restitution on all counts.

And there is a cold plea provision that attaches to your plea agreement. Meaning, sir, if you violated a bond condition or if you violated the law between now and your sentencing hearing or if you failed to cooperate with the preparation of your PSI or your ASI, if any of those things happened, then, at your sentencing hearing, the State could invoke or they would call that a cold plea provision. At that time, you would lose the protections of your plea agreement, and then the State would be free to argue for the maximum potential penalty allowed by law on all counts.

The district court then asked Mr. Hughes directly if that was his understanding of the plea agreement, to which he responded: "Yes, ma'am." The court also asked whether there were any other terms or conditions that were not covered, to which Mr. Hughes responded, "No, ma'am."

[¶12] The district court read each of the seven counts to Mr. Hughes and advised him of his rights. It then stated:

You also need to understand, Mr. Hughes, that I am not a party to your plea agreement. That is just something that you've worked out, with [your counsel's] help, with the State of Wyoming. And, as I mentioned earlier, at your sentencing hearing, the State will make a recommendation as to a sentence and you and [your counsel] will make a recommendation. I can follow either of those recommendations or I can impose a sentence on my own that I believe to be appropriate. If I don't follow either of the recommendations and I just impose a sentence on my own, the way that your plea agreement is

4

structured, you would not be allowed to withdraw your guilty pleas.

Mr. Hughes confirmed he understood those conditions. The district court accepted the pleas, adjudged Mr. Hughes guilty as charged on Counts One through Five and Seven, and then dismissed Count Six.

### *Sentencing*

[¶13] Prior to the sentencing hearing, Mr. Hughes submitted a sentencing memorandum which summarized the plea agreement as follows:

> Pursuant to the plea agreement in this matter, the State will cap, or limit, its request for a sentence of imprisonment to no more than 5 years, and recommend that any imposed sentences run concurrently, including Count Seven. Count Six (felony property destruction) will be dismissed by the State, but Mr. Hughes has agreed to pay any restitution related to that charge as ordered by the Court. Finally, there is a standard "cold plea" provision. Should Mr. Hughes violate any bond conditions or violate the law, he could lose the protections of his plea agreement but be unable to withdraw his pleas. Mr. Hughes understands that the Court does not see this type of plea agreement as binding upon its decision as to final disposition.

At the sentencing hearing, the district court heard victim impact statements from two of the individuals who were upstairs when Mr. Hughes fired his pistol on August 22, 2024. It also heard testimony from a psychologist that met with Mr. Hughes after his arrest.

[¶14] Before announcing its sentence, the district court stated it relied on the presentence investigation report, the victim impact statements, and Mr. Hughes' sentencing memorandum. Citing the severity of the crimes, number of victims, and the heinous nature of Mr. Hughes' actions, the district court announced it would not follow the State's recommendation. The district court sentenced Mr. Hughes to four-to-five year sentences for Counts One through Five, each to run consecutively to one another. It then delivered the maximum one-year sentence for Count Seven to run consecutively to the sentences for Counts One through Five. When asked if any clarification was needed, Mr. Hughes offered no objection.

## STANDARD OF REVIEW

[¶15] Mr. Hughes' appeal requires this Court to interpret the terms of his plea agreement and determine what type of bargain he entered with the State. "A plea agreement is a

5

contract between the State and the defendant to which we apply general principles of contract law." *Wells v. State*, 2026 WY 37, ¶ 15, 587 P.3d 106, 109-10 (Wyo. 2026) (citations omitted). We review a district court's interpretation of a contract de novo. *TEP Rocky Mountain LLC v. Rec. TJ Ranch Ltd. P'ship*, 2022 WY 105, ¶ 37, 516 P.3d 459, 472 (Wyo. 2022) (citations omitted); *see also Noel v. State*, 2014 WY 30, ¶ 17, 319 P.3d 134, 142 (Wyo. 2014) ("Review of a plea agreement is de novo.").

[¶16] Mr. Hughes argues that the district court erred during the plea agreement process and at sentencing. Mr. Hughes did not object to the district court's acceptance of his plea agreement or during the sentencing process. Therefore, we review this matter for plain error. *See Noel*, ¶ 23, 319 P.3d at 143 (applying plain error review where the defendant did not object to the plea-taking procedure); *Sandoval v. State*, 2009 WY 121, ¶ 6, 217 P.3d 393, 395 (Wyo. 2009) (applying plain error review when defendant did not object to the district court's sentencing procedure). This is true even when a defendant alleges a violation of constitutional rights. *Jewkes v. State*, 2022 WY 90, ¶ 7, 513 P.3d 154, 158 (Wyo. 2022) (citations omitted). To establish plain error, Mr. Hughes must show: "1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him." *Aisenbrey v. State*, 2024 WY 131, ¶ 11, 560 P.3d 283, 286 (Wyo. 2024) (quotations omitted) (citations omitted).

## DISCUSSION

**I.      The plea agreement did not provide for a Rule 11(e)(1)(C) specific sentence.**

[¶17] Mr. Hughes' plea agreement consisted of three elements. First, the State agreed it would dismiss Count Six in exchange for the guilty plea. Second, the parties agreed that for each felony offense, the sentence would not exceed five years in prison. Finally, the parties agreed that whatever sentence Mr. Hughes would receive for the remaining counts, those sentences "would run concurrently or at the same time."

[¶18] The parties do not assert that the plea agreement is ambiguous. Instead, they disagree on what type of plea agreement they reached under the Wyoming Rules of Criminal Procedure. Rule 11 describes, in general, the plea agreement procedure:

> The attorney for the state and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser related offense, the attorney for the state will do any of the following:

6

(A) Agree not to prosecute other crimes or move for dismissal of other charges;

(B) Make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) Agree that a specific sentence is the appropriate disposition of this case.

W.R.Cr.P. 11(e)(1)(A)-(C) (2026). Mr. Hughes maintains the district court misconstrued the agreement as a non-binding plea agreement under Rule 11(e)(1)(B). He argues the plea agreement consisted of a charge-bargain and a specific sentence pursuant to Rule 11(e)(1)(A), & (C), and therefore, the district court erred by adding the condition that Mr. Hughes could not withdraw his guilty plea if the district court did not accept the sentencing elements of the agreement.

[¶19] Rule 11 requires the disclosure of a plea agreement to the court "at the time the plea is offered." W.R.Cr.P. 11(e)(2). Because the plea agreement in this case was not reduced to a specific written document, "we must look to the recitation of the plea agreement given at the change of plea hearing to determine the terms of the agreement." *Ford v. State*, 2003 WY 65, ¶ 12, 69 P.3d 407, 411 (Wyo. 2003); *see also Noel*, ¶ 18, 319 P.3d at 142 (relying on the district court's colloquy with the defendant in determining what consideration was offered in exchange for the change of plea); and *Henry v. State*, 2015 WY 156, ¶ 14, 362 P.3d 785, 789 (Wyo. 2015) (reviewing the plea agreement "as recited by the parties at the change of plea and sentencing hearings" when no written plea agreement existed).[1]

[¶20] At the change of plea hearing, the State recited that Mr. Hughes would enter guilty pleas "to all counts with the exception of Count Six," which the State dismissed. Additionally, the State explained it "agreed to cap its sentencing argument on Counts One through Five at five years" of incarceration. Finally, the State explained "[a]ll those sentences would run concurrent to one another."

[¶21] The change of plea record does not state or suggest that the disposition of the case was contingent on an agreement for a five-year cap for Counts One through Five.

---

[1] Mr. Hughes asserts the statute of frauds should apply to plea agreements in felony matters because felony sentences cannot be completed within one year. However, he has not specifically demonstrated that the terms of *his plea agreement* fall within Wyo. Stat. Ann. § 1-23-105(a)(i). Even so, the Wyoming Rules of Criminal Procedure do not expressly require written plea agreements. *See* W.R.Cr.P. 11(e)(2) (requiring only the disclosure of the plea agreement on the record when the plea is offered, absent a showing of good cause for *in camera* disclosure); *see also Springstead v. State*, 2020 WY 47, ¶ 15, 460 P.3d 1117, 1122 (Wyo. 2020) (applying contract law principles to plea agreements but recognizing plea agreements remain governed by the Wyoming Rules of Criminal Procedure).

Similarly, nothing in the record indicates that concurrent sentencing for each Count was required to secure Mr. Hughes' guilty pleas. Conversely, the State explained it "has agreed to cap its sentencing argument on Counts One through Five," suggesting that the plea agreement was entered in exchange for the State's recommendation under Rule 11(e)(1)(B). The district court then confirmed with Mr. Hughes that was his understanding with the State.

[¶22] Later in the proceedings, the district court reiterated each Count and the plea agreement terms for Mr. Hughes. Explaining that the court was not a party to the plea agreement, the district court stated:

> [A]t your sentencing hearing, the State will make a recommendation as to a sentence and you and [your counsel] will make a recommendation. I can follow either of those recommendations or I can impose a sentence on my own that I believe to be appropriate. If I don't follow either of the recommendations and I just impose a sentence on my own, the way that your plea agreement is structured, you would not be allowed to withdraw your guilty pleas.

When the court asked Mr. Hughes directly if he understood he responded: "Yes, ma'am."

[¶23] The parties' plea agreement is not ambiguous. *See Grater v. State*, 2020 WY 102, ¶ 9, 468 P.3d 1116, 1119 (Wyo. 2020) ("We enforce the agreement according to its terms so long as its language is clear and unambiguous."). The State's description of the plea agreement on the record does not suggest a specific sentence pursuant to Rule 11(e)(1)(C) was necessary to dispense with the charges against Mr. Hughes. The State clearly explained that it agreed to cap its "sentencing argument" with respect to each Count.[2] In that context, the parties' sentencing arrangement, including the agreement for concurrent sentencing, fell under Rule 11(e)(1)(B). When invited to add any conditions which the district court did not cover, Mr. Hughes accepted the plea agreement as described without demur. Accordingly, the district court did not misconstrue the plea agreement.

## II. The district court did not err during the plea agreement or sentencing process.

---

[2] Mr. Hughes asserts the State agreed on the record to a specific sentence and the State should be estopped from arguing on appeal the plea agreement was instead for a sentence recommendation. Because the plea agreement provided for the State's sentencing recommendation under Rule 11(e)(1)(B), the State did not advance an inconsistent factual position on appeal. *See Rafter J Ranch Homeowner's Ass'n v. Stage Stop, Inc.*, 2024 WY 114, ¶ 45, 558 P.3d 562, 575 (Wyo. 2024) (recognizing "the doctrine of judicial estoppel is narrow and applies only to changing positions as to facts."). Therefore, we do need to consider Mr. Hughes' judicial estoppel argument.

[¶24] Mr. Hughes' second issue relies on the premise that the district court rejected, at least in part, the plea agreement during the change of plea hearing. We disagree. As discussed below, the district court unequivocally accepted the plea agreement and followed through with its acceptance by dismissing Count Six and reserving its sentencing decision until it considered the parties' sentencing recommendations.

## A.    The district court did not err when it accepted the plea agreement.

[¶25] Mr. Hughes argues the district court erred because "it did not give [him] the opportunity to withdraw his pleas after it rejected the plea agreement." Because the plea agreement included a charge-bargain under Rule 11(e)(1)(A), he asserts Rule 11(e)(2) entitled him to withdraw his pleas after the district court rejected the concurrent sentencing recommendation. The change of plea transcript provides a clear record of the alleged error, so under the applicable standard of review, we must consider whether "there was a transgression of a clear and unequivocal rule of law." *Aisenbrey*, ¶ 11, 560 P.3d at 286.

[¶26] Wyoming Rule of Criminal Procedure 11(e)(2) governs the district court's plea agreement decision. W.R.Cr.P. 11(e)(2). Two components of Rule 11(e)(2) are relevant in this case. First, "[i]f the agreement is of the type specified in subdivision (e)(1)(A) or (e)(1)(C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report." *Id.* Second, "[i]f the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw the plea." *Id.*

[¶27] Mr. Hughes maintains the district court improperly severed his "hybrid bargain" by accepting the dismissal of Count Six but rejecting the sentencing bargain. But his argument rests on a false premise — the district court did not reject any part of Mr. Hughes' plea agreement. The district court unmistakably stated *it accepted* the plea agreement and contemporaneously dismissed Count Six. With respect to Mr. Hughes' charge-bargain, the district court complied with Rule 11(e)(2).

[¶28] The district court similarly did not err with respect to the parties' sentencing bargain under Rule 11(e)(1)(B). When it accepted the plea agreement, the district court advised Mr. Hughes that while the State could make a recommendation, and Mr. Hughes could make a recommendation as to sentencing, the court "can follow either of those recommendations or I can impose a sentence on my own that I believe to be appropriate." Additionally, if the court did not accept the State's recommendation at the sentencing hearing, it advised Mr. Hughes he had no right to withdraw his plea agreement. The district court did as it was required; it "advise[d] the defendant that if the court does not accept the recommendation or request, the defendant nevertheless has no right to withdraw the plea." W.R.Cr.P. 11(e)(2).

9

[¶29] We cannot discern from the record any instance where the district court severed or rejected the plea agreement during the change of plea hearing. When a court rejects a plea agreement, it shall inform the parties on the record, advise the defendant that the court is not bound by the agreement and "afford the defendant the opportunity to then withdraw the plea." W.R.Cr.P. 11(e)(4) ("Rejection of Agreement"); *see also Frederick v. State*, 2007 WY 27, ¶ 21, 151 P.3d 1136, 1143 (Wyo. 2007) (recognizing courts must provide the defendant an opportunity to withdraw a rejected sentence specific plea deal). Mr. Hughes is correct that had the district court rejected his plea agreement, he would have been allowed to withdraw his pleas because the agreement included a Rule 11(e)(1)(A) charge bargain. But here, the district court accepted the plea agreement. *See Percival v. State*, 745 P.2d 557, 559 (Wyo. 1987) ("[T]he court is not bound by any part of the plea bargain until such time as it accepts the bargain, thereby agreeing to be bound by it.").

[¶30] Although it ultimately rejected the State's sentencing recommendation, when a district court deviates from a recommended sentence it does not constitute a rejection of the plea agreement. *See Mehring v. State*, 860 P.2d 1101, 1110-11 (Wyo. 1993) (distinguishing the district court's rejection of a plea agreement in its entirety, the dismissal of charges, or an agreement for a specific sentence, from rejecting a Rule 11(e)(1)(B) sentencing recommendation). Therefore, the district court did not err when it accepted Mr. Hughes' plea agreement.

## B. The district court was not required to make specific findings when it rejected the State's sentencing recommendation.

[¶31] Mr. Hughes argues the district court abused its discretion by rejecting the plea agreement without explaining its reason for doing so. Again, the district court did not reject the plea agreement, it rejected the State's sentencing recommendations.[3] Nonetheless, Mr. Hughes maintains the district court did not satisfy his due process rights and did not establish why it deviated from the State's recommendations.

[¶32] Mr. Hughes did not object to the district court's sentencing decision. The sentencing hearing occurred on the record so we must again consider whether the district court transgressed a clear and unequivocal rule of law and such violation adversely affected his substantial right. *Sandoval*, ¶ 6, 217 P.3d at 395 (citing *Manes v. State,* 2004 WY 70, ¶ 9, 92 P.3d 289, 292 (Wyo. 2004)).

[¶33] "The district court has the discretion to consider a broad range of information when evaluating the character of the defendant and the nature of the crimes." *Atkinson v. State*, 2026 WY 51, ¶ 16, 588 P.3d 1095, 1099 (Wyo. 2026). Sentencing must still satisfy the

---

[3]As such, this Court does not need to address Mr. Hughes' invitation to hold that district courts must place on the record their reasons for rejecting a plea agreement.

requirements of due process and ensure that the information the sentencing court relies on is reliable and accurate. *Mendoza v. State*, 2016 WY 31, ¶ 24, 368 P.3d 886, 894 (Wyo. 2016) (citation modified) (citation omitted). There is no requirement that a sentencing court make specific findings in sentencing matters. *See Monjaras v. State*, 2006 WY 71, ¶ 9, 136 P.3d 162, 164 (Wyo. 2006) (noting longstanding precedent that "law does not require a trial court to render specific findings in sentencing matters").

[¶34] Mr. Hughes asserts the district court's decision implicated his due process rights. "In sentencing, due process provides a right to be sentenced only on accurate information." *Manes*, ¶ 9, 92 P.3d at 292 (citations omitted). The district court relied on a presentence investigation report and an addendum which included the victim impact statements during sentencing. It also relied on Mr. Hughes' sentencing memorandum which included letters of support from family, friends, and his former law enforcement colleagues. Notably, Mr. Hughes' sentencing memorandum described his plea agreement as: "the State will cap, or limit, its request for a sentence of imprisonment to no more than 5 years, and recommend that any imposed sentences run concurrently, including Count Seven." Although Mr. Hughes does not challenge the reliability of the information the district court relied on, he asserts the plea agreement stands for something different than what he argued to the district court in his sentencing memorandum during sentencing. Because Mr. Hughes has not shown the district court relied on unreliable information in rejecting the State's sentencing recommendation, his due process argument is not viable.

[¶35] Although the district court was not required to make specific findings at sentencing, it nonetheless explained its rationale on the record. Specifically, the district court identified the severity of the crimes, number of victims, and the heinous nature of Mr. Hughes' actions before deciding it was not going to follow the State's sentencing recommendations.

[¶36] Sentencing decisions rest within the broad discretion of the district court. *Sandoval*, ¶ 7, 217 P.3d at 395 (citing *DeLoge v. State*, 2002 WY 155, ¶ 9, 55 P.3d 1233, 1237-38 (2002)). It was well within the district court's discretion to reject the State's recommendation that Mr. Hughes' sentences run concurrently. *See, e.g., Percival*, 745 P.2d at 559-60 (recognizing a sentencing recommendation is not binding on the district court and affirming the rejection of the State's sentencing recommendation). We find the district court did not err because it did not transgress a clear and unequivocal rule of law.

## CONCLUSION

[¶37] The district court did not misconstrue the parties' plea agreement. The plea agreement included a charge-bargain that provided for the dismissal of Count Six and an agreement by the State to limit its sentencing argument. In accepting the plea agreement, the district court did not err when it subsequently rejected the State's recommendations and sentenced Mr. Hughes to serve his sentences consecutively.

[¶38] Affirmed.